UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE MIGUEL ARENADO-BORGES also known as JOSE MIGUEL ARENADO,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General of the United States, et al.,<br><br>Respondents. | CASE NO. 2:25-cv-02193-JNW<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## 1. INTRODUCTION

Jose Miguel Arenado-Borges's petition for a writ of habeas corpus, Dkt. No. 6, and the Government's return, Dkt. No. 12, come before the Court. Arenado-Borges asks the Court to: (1) order his release from custody on the grounds that his continued detention violates his due process rights; (2) prohibit the Government from removing or seeking to remove him to a third country "without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings"; and (3) prohibit the Government from removing him to any third country because its third-country removal program "seeks to

impose unconstitutional punishment on its subjects." Dkt. No. 15 at 7. The Court GRANTS the petition on the first two bases for the reasons below.

## 2. BACKGROUND

Arenado-Borges is a 63-year-old Cuban national who arrived in the United States in 1967[1] as a child. Dkt. No. 6-1 at 9. He was paroled into the United States and became a lawful permanent resident in 1977. *Id*. In the 1990s, Arenado-Borges was convicted of multiple crimes and served a state-custody sentence. *See* Dkt. No. 14 ¶ 5. Following his release from state custody, Arenado-Borges was placed in removal proceedings. *See id*. ¶¶ 5–6. On November 29, 1999, an Immigration Judge ("IJ") ordered him removed to Cuba. *Id*. ¶ 6. After the statutory 90-day removal period expired and he still remained in INS custody, Arenado-Borges filed a habeas petition, alleging that he was being indefinitely detained, without a reasonable likelihood of removal in the foreseeable future. *See* Dkt. No. 6-1 at 5–21. The district court granted the petition and ordered that Arenado-Borges be released on supervisory conditions. *Id*. at 2–3. As directed, the Government released Arenado-Borges under an Order of Supervision ("OSUP"). Dkt. No. 14 ¶ 7.

For nearly twenty-five years, Arenado-Borges lived in the community and reported regularly to immigration authorities as required by his OSUP. *See* Dkt. No. 6 at 6.

---

[1] There is conflicting evidence on Arenado-Borges's entry date. The Government asserts that Arenado-Borges entered the United States in August 1974. Dkt. Nos. 13-1 at 4; 14 ¶ 4. But whether he entered in 1967 or 1974 makes no difference to the Parties' arguments or the Court's analysis.

On April 15, 2025, Arenado-Borges reported to an Immigration and Customs Enforcement ("ICE") field office for his routine check-in, and ICE instructed him to return on May 27 for another check-in. *Id.* When he appeared in person as directed, ICE detained him. Dkt. No. 14 ¶ 9. He is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he has been for more than five months.

On June 25, 2025, ICE submitted a nomination to the Government of Cuba, requesting that it accept Arenado-Borges for removal. *Id.* ¶ 11. Cuba has not responded. *Id.* On November 20, 2025—nearly six months after his detention began—ICE served Arenado-Borges with notice of its intent to remove him to Mexico as a third country. Dkt. No. 14 ¶ 12. The Government asserts that "[i]f Petitioner does not claim fear of removal to Mexico, ICE will attempt to remove him expeditiously." *Id.* at 5; Dkt. No. 14 ¶ 13. It adds that if Arenado-Borges expresses a fear of removal to Mexico, "his case will be referred to U.S. Citizenship and Immigration Services for a third country fear screening." Dkt. Nos. 12 at 5; 14 ¶ 14.

Arenado-Borges filed this habeas petition on November 6, 2025, alleging his continued detention violates the Due Process Clause under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and seeking to prevent his removal to Mexico without notice and an opportunity to be heard in compliance with 8 U.S.C. § 1231(b) and the Fifth Amendment. Dkt. No. 6.

As of the date of this order, Petitioner has been detained for more than six months.

## 3. DISCUSSION

**3.1 Legal standard.**

A federal court may grant a writ of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**3.2 The Court has subject matter jurisdiction.**

The Government contends that 8 U.S.C. § 1252(g) bars this Court from reviewing ICE's decisions to revoke Arenado-Borges's OSUP, detain him, and

execute his removal order. Dkt. No. 12 at 7. Binding precedent compels a much narrower reading of the statute.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action* by the Attorney General *to commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). The Supreme Court has interpreted this provision narrowly, limiting it to only "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (quoting 8 U.S.C. § 1252(g)) (emphasis in original). The Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.,* and cautioned against interpreting it to "sweep in any claim that can technically be said to 'arise from'" these three actions, *Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018); *see AADC,* 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

Many courts have held that challenges to the length of detention or the revocation of supervised release fall outside Section 1252(g) because they do not implicate one of the statute's three enumerated actions. *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *7 (D. Or. Aug. 21, 2025) ("Courts have 'distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

order, which are not.'" (quoting *Ceesay v. Kurzdorfer*, 25 CV-267-LJV, 2025 WL 1284720, at *8 (W.D.N.Y. May 2, 2025)).

For instance, in *Ceesay v. Kurzdorfer*, the district court determined that because the petitioner "d[id] not challenge ICE's ability to remove him but only the legality of his current detention" and "ICE's ability to hold him in detention without adequate process for weeks and months on end," Section 1252 did not bar jurisdiction. 2025 WL 1284720, at *9–10. Likewise, in *M.S.L. v. Bostock*, the court concluded that the petitioner was "not challenging her order of removal" but was rather challenging "the present fact of her detention and the lack of process surrounding her detention," including the lack of process surrounding the revocation of her OSUP. 2025 WL 2430267, at *7. Moreover, the Supreme Court's decision in *Zadvydas* confirms that individuals with removal orders can challenge their confinement through habeas petitions, as long as the habeas petition does not require the court to review one of the three distinct actions listed in Section 1252(g). 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Like the petitioners in *Ceesay* and *M.S.L.*, Arenado-Borges challenges the revocation of his OSUP and indefinite detention—not his removal order. His petition thus falls outside of Section 1252(g). The Government's reliance on Section 1252(a)(5) and (b)(9), *see* Dkt. No. 12 at 7, fares no better. Those sections apply "only to those claims seeking judicial review of orders of removal." *Singh v. Gonzales*, 449

F.3d 969, 978 (9th Cir. 2007); *M.S.L.*, 2025 WL 2430267, at *6 (quoting *Singh*, 449 F.3d at 978).

Accordingly, the Court has subject matter jurisdiction over Arenado-Borges's case.

### 3.3 Indefinite immigration detention, as defined by the Supreme Court in *Zadvydas*, violates due process.

Arenado-Borges argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Due process protections cover non-citizens subject to final orders of removal, limiting how long they may be detained. *Id.* at 693–701. After a final order of removal, the Government ordinarily secures the non-citizen's removal "during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. Arenado-Borges is detained under 8 U.S.C. § 1231(a)(6), a "special statute [that] authorizes further detention if the Government fails to remove the alien during those 90 days." *Id.* Under that statute, ICE may continue to detain certain removable non-citizens past the 90-day window, or it may choose to release them on conditions of supervised release. *Id.* (citing 8 U.S.C. § 1231(a)(6)).

But this authority is not unlimited. In *Zadvydas*, the Supreme Court held that the statute "does not permit indefinite detention." 533 U.S. at 689. Rather, it

allows detention only for "a period *reasonably necessary* to bring about that [noncitizen]'s removal from the United States." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Six months is the presumptive *ceiling* for reasonable detention. *Id.* at 701. After six months, the burden is on the noncitizen to show "that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025) (citation modified) (quoting *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003)). The burden then shifts to the Government to rebut that showing. *Zadvydas*, 533 U.S. at 701. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Arenado-Borges has been detained for more than six months—the parties agree on this point. Dkt. No. 12 at 3. His detention is thus not presumptively reasonable. Arenado-Borges has shown there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future. And the Government does not meaningfully dispute that removal to Cuba is unlikely at this point. *See generally* Dkt. No. 12. Given the Government has been unable to remove him to Cuba for decades, the silence from Havana provides good reason to believe his removal is not likely to happen in the foreseeable future. Arenado-Borges has met his initial burden.

The Government has not rebutted that showing. It pivots to Mexico, Dkt. No. 14 ¶ 12, arguing that ICE has "had success in removing Cuban nationals to Mexico" and "will attempt to remove him expeditiously," *Id.* ¶ 13.

But as Arenado-Borges points out, no evidence substantiates the Government's assertion that it can remove him to Mexico in the reasonably foreseeable future. Indeed, the Government simply states that it will "attempt to remove him." *Id.* It does not identify Mexico's processes or policies for accepting Cuban nationals. And, standing alone, the fact that removals to a particular country "are in fact occurring," says nothing about whether Mexico will accept Arenado-Borges any time soon. *Cf. Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025).

Moreover, the record suggests Mexico's acceptance may be contingent on the noncitizen's consent. In *Rios v. Noem et al.*, No. 3:25-cv-02866-JES-VET (S.D. Cal. 2025), an ICE Detention Officer stated that Mexico refused to accept a Cuban national because he did not agree to be removed to Mexico. He explained:

> ICE drove Petitioner to the Mexican border to effectuate his third country resettlement, but Petitioner refused to willingly go to Mexico. Petitioner did not express a fear of removal to Mexico. The Mexican government was ready to accept Petitioner only if he would willingly go to Mexico.

*Id.* ¶ 11. This evidence of Mexico's acceptance policy casts further doubt on the Government's ability to remove Arenado-Borges to Mexico in the reasonably foreseeable future, especially when the Government has failed to explain why it believes Mexico will accept Arenado-Borges specifically.

All the Court can take from the Government's assertions is the assumption that "there is at least some possibility" that Mexico might "accept Petitioner at some point." *Abubaka v. Bondi*, No. 25-cv-1889-RSL, 2025 WL 3204369, at *5 (W.D. Wash. Nov. 17, 2025) (quoting *Nguyen v. Scott*, 796 F. Supp. 3d at 725). But as other courts in this district have found, "[t]hat is not the same as a significant likelihood that [the petitioner] will be accepted in the reasonably foreseeable future." *Id.* (quoting *Nguyen*, 796 F. Supp. 3d at 725); *see also Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (holding Government failed to meet *Zadvydas* standard on rebuttal because it provided "no substantive indication regarding how or when it expect[ed] to obtain the necessary travel documents" to remove the petitioner).

On this record, there is no good reason to believe that ICE is likely to remove Arenado-Borges in the reasonably foreseeable future. Release is therefore warranted under *Zadvydas*.

**3.4  The Government must follow the law governing third-country removal.**

Arenado-Borges argues that the Government may not remove him to Mexico—or any third country—without providing constitutionally and statutorily adequate notice and a meaningful opportunity to contest the designation in reopened removal proceedings. The Government's sole response is that relief is foreclosed by the Supreme Court's stay of the preliminary injunction in *D.V.D. v. Department of Homeland Sec.*, 145 S. Ct. 2153 (2025). It does not address the

merits. The Court first concludes that *D.V.D.* does not bar relief, then turns to what process is due under the circumstances.

### 3.4.1 That Arenado-Borges may be a class member in *D.V.D. v. Department of Homeland Security* does not preclude his request for relief regarding third-country removal.

The Government contends that Arenado-Borges cannot obtain relief because he is a member of the plaintiff class in *D.V.D. v. Department of Homeland Security*, Civ. A. No. 25-10676 (D. Mass.). In *D.V.D.*, the district court certified a class of noncitizen petitioners and enjoined the Government from removing them to third countries unless specific conditions were met. 778 F. Supp. 3d 355, 392–93 (D. Mass. 2025). It found that the petitioners were likely to show that "[d]efendants have a policy or practice of executing third-country removals without providing notice and a meaningful opportunity to present fear-based claims." Thus, it found the Government's third-country removal policy or practice likely violates procedural due process. *Id.* at 387. The Government appealed the injunction, and the Supreme Court eventually stayed that injunction in an unexplained, emergency-docket order. *D.V.D.*, 145 S. Ct. 2153.

The Government makes two arguments: first, that the Supreme Court's stay reflects a determination that the *D.V.D.* petitioners are unlikely to succeed on the merits; second, that under Ninth Circuit precedent, a class member like Arenado-Borges cannot request the same relief in a separate action. Neither argument is persuasive.

On the first point, numerous courts have rejected the Government's argument, concluding that the Supreme Court's unexplained emergency-docket decision in *D.V.D.* warrants no precedential weight. *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 729–730; *Abubaka*, 2025 WL 3204369, at *2; *Medina v. Noem*, No. 25-cv-1768-ABA, 2025 WL 2841488, at *8 (D. Md. Oct. 7, 2025); *Santamaria Orellana v. Maker*, No. 25-1788-TDC, 2025 WL 2841886, at *11 (D. Md. Oct. 7, 2025). The Court finds *Nguyen* helpful on this point—it explains that "[i]f [a] stay grant makes it clear that the movant's position on a legal question is likely correct, lower courts can—and should—treat the Court's decision as precedential." 796 F. Supp. 3d at 732 (quoting The Hon. Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827, 857 (2021)). The more "detail and clarity" the Supreme Court's stay provides as to its reasoning, "the more confident a lower court can be in treating the Court's opinion as precedential." *Id.* (quoting McFadden & Kapoor at 864); *cf. California v. U.S. Dep't of Educ.*, No. 25-CV-10548-AK, 2025 WL 3165713, at *10 (D. Mass. Nov. 13, 2025) (explaining that the Supreme Court's reasoning, or "*ratio decidendi*," is what guides lower courts in their decision making). But sometimes, as with the Supreme Court's decision in *D.V.D.*, it is unclear why the Supreme Court granted a stay, "or which argument it found likely to prevail on appeal." *Nguyen*, 796 F. Supp. 3d at 732.

This Court agrees with the other courts that have examined the issue that the Supreme Court's emergency stay of the *D.V.D.* injunction is neither binding nor persuasive, as it provides no reasoning and is thus too vague to apply here. *See D.V.D.*, 145 S. Ct. 2153. In *D.V.D.*, when the Government applied for an emergency

stay in the Supreme Court, it made numerous arguments—including the argument that the district court lacked the authority to enter a nationwide injunction preventing third-country removal. The Supreme Court did not clarify which argument or arguments it found persuasive in granting the requested stay. This is particularly important here because whether the Court may grant a nationwide injunction is immaterial to Arenado-Borges's requested, individualized relief. *See Nguyen*, 796 F. Supp. 3d at 732. Accordingly, the Court concludes that the Supreme Court's emergency stay of *D.V.D.* does not bar habeas relief here.

On the second point, the Court finds it unpersuasive because, under these circumstances, Ninth Circuit precedent permits Arenado-Borges to seek individual relief. As it did in *Nguyen*, the Government relies on *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013) to argue that Arenado-Borges may not seek relief from third-country removal outside the *D.V.D.* class action, as he is a member of that non-opt-out class. In *Pride*, the Ninth Circuit explained that a district court may dismiss the portions of an individual's separate complaint that duplicate the relevant class action's allegations and prayer for relief. 719 F.3d at 1133 (quoting *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979)). But that holding does not preclude individuals from seeking relief that "go[es] beyond the allegations and relief prayed for" in the relevant class action. *Id.* (quoting Crawford, 599 F.2d at 893); *Nguyen*, 796 F. Supp. 3d at 729. Indeed, in *Pride*, the Ninth Circuit held that the plaintiff's claims were distinct from those advanced in the relevant class action because the plaintiff did not seek the same, systemic relief that the class sought. 719 F.3d at 1132, 1137. And the court noted that because the plaintiff's claims had not been conclusively

resolved by the class action, without an opportunity to seek individual relief, he would be "powerless to petition the courts for redress" until the class litigation had been "fully resolved." 719 F.3d at 1137.

In *Nguyen*, the district court applied *Pride* to a habeas petition much like Arenado-Borges's petition and found that *Pride* did not preclude relief. 796 F. Supp. 3d at 729–30 (quoting *Pride*, 719 F.3d at 1137). On review, the Court agrees with *Nguyen's* analysis, adopts it, and finds that Arenado-Borges's due process claim is not identical to the claims in the *D.V.D.* class action. For instance, he argues that he must have an opportunity to seek withholding of removal, "a claim not at issue in *D.V.D.*" *Id.* at 730; *A.A.M.*, 2025 WL 3485219, at *7. Additionally, Arenado-Borges does not seek systemic relief but rather individual habeas relief. *See generally* Dkt. No. 6; *see also Nguyen*, 796 F. Supp. 3d at 730; *A.A.M.*, 2025 WL 3485219, at *6. Moreover, if the Government's argument were accepted, Arenado-Borges would be unable to address his due process claims until the relevant class action resolved— potentially years from now. *See Nguyen*, 796 F. Supp. 3d at 730. Accordingly, the class certification order in *D.V.D.* does not preclude Arenado-Borges from seeking individual relief here.

### 3.4.2  Due process requires notice and an opportunity to be heard.

Having concluded that *D.V.D.* does not foreclose relief, the question, then, is what process Arenado-Borges is due before the Government may remove him to a third country.

In some cases, the Government may designate new, third countries for removal after removal proceedings have concluded. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1008 (W.D. Wash. 2019). But these designations "are subject to the same mandatory protections that exist in removal proceedings." *Kumar v. Wamsley,* No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, if the Government cannot remove a noncitizen to a country specified in the applicable removal order, then it may attempt to remove that person to a third country, but only as permitted by 8 U.S.C. § 1231(b) and the Due Process Clause. *Aden*, 409 F. Supp. 3d at 1009 (citing 8 C.F.R. § 1240.12(d)).

First, to comply with due process, ICE must provide notice and a meaningful opportunity for the petitioner to present any claim of fear of persecution or harm upon removal to a newly designated third country. *Id*. The petitioner must have an opportunity to apply for asylum, withholding of removal, or protection under the Convention Against Torture. *Id.* at 1010–11; *Nguyen*, 796 F. Supp. 3d at 727. Indeed, "[i]n the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016).

Second, 8 U.S.C. § 1231(b)(3)(A) precludes ICE from removing a noncitizen to any country where their "life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must

"make a determination regarding a noncitizen's claim of fear *before* deporting him." *Aden*, 409 F. Supp. 3d at 1010 (emphasis added); 8 U.S.C. § 1231(b)(3)(A).

If a noncitizen claims fear of removal to a designated third country, courts in this district have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka*, 2025 WL 3204369, at *6; *Aden*, 409 F. Supp. 3d at 1011; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL 2987766, at *3, *4 (W.D. Wash. Oct. 23, 2025) (providing preliminary relief); *Nguyen*, 796 F. Supp. 3d at 739 (same); *A.A.M. v. Tonya Andrews, et al.*, 2025 WL 3485219, at *8 (E.D. Cal. Dec. 4, 2025) (same; finding petitioner was likely to show that due process requires "an opportunity to have his fear-based claims for removal to Cameroon considered by an immigration judge."). Simply allowing the petitioner *to move to reopen* their immigration proceedings is not enough to satisfy Due Process—the Government must *actually reopen* proceedings so that the petitioner has a fair and adequate opportunity to be heard. *Aden*, 409 F. Supp. 3d at 1010–11 (citing *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) ("The importance of an asylum or withholding applicant's testimony cannot be overstated[.]")); *Nguyen*, 796 F. Supp. 3d at 727; *A.A.M.*, 2025 WL 3485219, at *11 (applying persuasive precedent from this district); *but see Kumar*, 2025 WL 3204724, at *9 (requiring the Government to reopen removal proceedings only if Petitioner was found to have a reasonable fear of removal to the designated third country in ICE's reasonable fear interview); *Sagastizado v. Noem*, 2025 WL 2957002, at *16 (S.D. Tex. Oct. 2, 2025) (enjoining Government from "removing Petitioner . . . until seven (7) days after an

Immigration Judge reviews Petitioner's denied Reasonable Fear Interview, and only if the Immigration Judge affirms such denial").

These district court cases are not binding, but the Government offers nothing to the contrary. It did not respond to Arenado-Borges's substantive arguments about third-country removal, nor did it cite any cases on this point. The Court finds the reasoning in *Aden* and the other cases cited above persuasive and concludes that Arenado-Borges must be provided constitutionally and statutorily compliant notice, an opportunity to respond, and—if he has a fear of persecution or torture—reopened removal proceedings before an Immigration Judge.

**3.5  On this record, Petitioner has not shown that the Government's third-country removal policies are punitive such that they violate his Fifth and Eighth Amendment rights.**

Arenado-Borges argues that ICE's removal policies are punitive and thus violate the Fifth and Eighth Amendments. The Government does not respond to this claim, nor does Arenado-Borges address it in his traverse.

The Constitution prohibits the Government from imposing punishment on noncitizens subject to removal orders without the protections of a criminal trial. *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896); *Zadvydas*, 533 U.S. at 693–94. In *Nguyen*, the court found the petitioner likely to succeed on this claim based on evidence—sworn declarations—that "pre-1995 Vietnamese immigrants who have been deported to South Sudan and Eswatini have been imprisoned incommunicado since their arrival." 796 F. Supp. 3d at 734. The court in *Abubaka*

adopted those findings and granted habeas relief to another pre-1995 Vietnamese national facing removal to the same countries. 2025 WL 3204369, at *8.

This case is different. The Government seeks to remove Arenado-Borges—a Cuban national—to Mexico, not to South Sudan or Eswatini. Arenado-Borges has offered no evidence that Cuban nationals removed to Mexico face imprisonment or other punitive treatment upon arrival. The *Nguyen* and *Abubaka* findings, which were specific to a particular population and particular destination countries, do not extend to these circumstances.

On this record, the Court cannot find that removal to Mexico would constitute unconstitutional punishment. The claim is denied without prejudice.

## 4. CONCLUSION

In sum, the Court GRANTS Petitioner's habeas petition, Dkt. No. 6. The Court ORDERS that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them must:

1. RELEASE Petitioner from custody immediately, subject to the conditions of his preexisting Order of Supervision. Nothing in this Order prevents Respondents from requesting the Government of Cuba accept Petitioner's return.

2. REFRAIN from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.

3. Within 48 hours of his release, PROVIDE the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is DENIED without prejudice.

Dated this 19th day of December, 2025, at 11:32 a.m.

Jamal N. Whitehead
United States District Judge